Good morning. Edward Olds on behalf of the appellant Spencer Spiker. I'd like to begin the argument. I think what I'd like to do is begin with a hypothetical to frame what I see as the issue. This is the first time in 25 years as a federal judge I've had an advocate pitch a hypothetical to us instead of the other way around. To begin with. Well, I think it will help the court understand, Your Honor. I hope it will help the court understand. So suppose Jennifer DiGiovanni worked in the Treasury Department and suppose she'd had dealings with Mr. Spiker in the past. And suppose 23 days after the due date for filing a tax return, in other words, on May 3rd of any given year, May 8th, she called up the field office and said, do you have a tax return from Spencer Spiker? The field office said, no, we don't. Would she have probable cause to commence a criminal proceeding against Spiker for a willful violation? Well, but wait a minute. Probable cause is defined by the nature of the crime. So we've got to figure out what the crime is in order to figure out whether she'd have probable cause. And you're talking about apples and oranges when you're talking about tax returns and the purportedly ambiguous statute. What I'm talking about is, in each case, the absence of a record that somebody did something. And so if there's no record that a tax return is filed 20 days after the due date, or if there's no record that Spencer Spiker registered 20 days after the due date, those are analogous situations. But then the assumption is that they didn't, and if that constitutes the crime, how is this helping you? Well, first of all, I would say that the mere absence of a record does not support an assumption that somebody is guilty of willful evasion or knowingly failing to register. So I don't think that the absence, and that's what we have. All right, that may be the key then, the knowingly. What gives rise to an inference of knowingly or willfully? Let me take you back to first things and ignore your hypothetical. I might be done with my hypothetical. I mean, there's been a lot of process in this case in the district court. Various amended complaints, an amended complaint that was not permitted on the Class of 1 claim. We have an appeal here that remains as to two of the party defendants who had initially been naked, is that right? That's correct. All right, and they are whom? Jennifer DiGiovanni and Sean Kelly. Who's the prosecutor. Who's the prosecutor and Sean Kelly who is the officer. And Sean Kelly who's the officer she contacted. Right, that's correct. What did the prosecutor do wrong? Be very basic about it. What did she do wrong? Well, what she did wrong was she, according to the affidavit of probable cause, she called up Sean Kelly and said, I don't think spent 20 days after 25 days. What's wrong with that? This is a prosecutor who had handled the case, obtained a conviction, a guilt determination, and followed up to see if the guy had registered. Well, first of all, the record indicates that she didn't typically do that. So? That doesn't make it wrong. Well, that doesn't make it wrong. To me, I was a district attorney, a district attorney of the county. If an assistant of mine had done that, I would have given a pat on the back. I mean, you've gone above and beyond. You're checking on whether or not there's been compliance with another law. What's wrong with that? Well, it seems to me, well, I guess what's wrong with it is that if it's done for, if the assistant district attorney does it for an impermissible reason or an impermissible motive. It's an objective standard, though, right? For purposes of immunity, it's an objective standard. We know that. I think Judge Smith is talking about the equal protection case as opposed to the Fourth Amendment case. No, no, no. Well, but if you ask me. Can you just answer my question before you go on to that? Okay, I'm sorry. It's an objective. For purposes of qualified immunity, and the reason I sort of jumped on you on that was you said, if the person knows or she knows, which sort of I took to mean that we need to evaluate what was in For qualified immunity purposes, this is an objective standard. Am I right or wrong on that? You're right on that, and as this case currently says, the qualified immunity was applied to the Fourth Amendment claim, and then we weren't allowed to file an equal protection claim because Judge Conte said that we didn't have a class. If I can just address your question about, and perhaps Judge Smith's question about DeGiovanni, well, even if you assume that there's nothing wrong with what she did, in other words, contacting a detective, even if you assume that, the fact is that she and the detective didn't have probable cause to proceed any further. Why? Well, because what we're dealing with is the absence of the record of his registration. I mean, according to the complaint and according to the statute, the probation office was charged with the duty to collect the information transmitted to the police. Judge Conte and the police officer have no role whatsoever in the probation office? They had, number one, they had no role, and number two, they had no information from the probation office whether Spiker presented himself to the probation office and gave the probation office information that would be used to register him as a sex offender. But how does he get jailed? I mean, and who issues the detainer subsequently? Subsequent, well, the way, as it turns out, the way he was jailed, and this sort of developed after the... The initial incarceration. Right. The initial incarceration was pursuant to a warrant that Sean Kelly got when he found out from the state police that the name didn't appear in the registration. That's a charge. Right. Right. Right. The second arrest... But then he's released on that. Right. And then the second arrest is that... A bench warrant. Right. An ex-party bench warrant that... Because what he'd done was a violation of probation, correct? That's correct. And that, well... So where, did DiGiovanni and Kelly have no role in that at all, right? Well, no, as a matter of fact, DiGiovanni was the causative factor in that because, according to this evidence that was developed after a judge dismissed... That's a very attenuated chain, isn't it? She mentions this to the judge's secretary, who the record doesn't show was asked to mention it then in turn to the judge. Right. And the judge, in turn, issues the bench warrant. Right. That's correct. A totally, according to the probation officer, a totally unique event. Isn't your argument that there's absolutely no evidence from which it can be inferred that the failure to register on the part of Spiker was a knowing failure? Well, in essence, that's correct because... And did Judge Conte analyze that? Well, Judge Conte, I think where she made the mistake was that she said, well, this statute might be confusing, and therefore... Well, the statute's setting forth the duty. Right. But the statute setting forth the crime was not addressed. Well, the statute setting forth the crime incorporates the process of registration that's set forth in the registration statute. In other words... But it does say knowingly, whereas the duty... Right. Absolutely. Right. And so what we have is, and I don't think that there's any dispute of this fact that the only information they had was that there was a failure to register. I mean, that the name didn't appear. The name didn't appear on the registration. It did not appear that anybody had registered him, probation or himself. Right. Which is a violation of the law, but you certainly have a lot of equity on your side because if the county had done apparently what the county was supposed to do, none of this happens. That's correct. So why is it not the case that Section 9795.2 creates two concurrent obligations, namely the obligation of the county to do its job, to report, and also your client's duty to ensure that he is, in fact, registered with the state registry? If the statute provided that, I would agree with what you just said. It doesn't? A1 doesn't provide that? The primary section, the first section, puts the obligation, shall be required to register. But that could be interpreted as meaning that the sentencing judge shall require the defendant, the convicted defendant, to register. Correct. And because it could be interpreted one way or the other, it's ambiguous. Okay. Because it's ambiguous, Judge Conning got it precisely correct in finding immunity here. She wasn't wrong in her ambiguity determination. You know what, D is not ambiguous, though. And what we're talking about is we're not talking about going back to probable cause. We're not talking about whether Mr. Spiker committed a crime. What we're talking about is whether there was probable cause to arrest him. Well, it's probable cause that he had committed the crime. Let me give you a hypothetical. Let's assume the county did what it was supposed to do and transmitted the information to the state, but someone at the state heard and didn't enter it into the computer. Then what? Well, that's the point I'm making precisely, because in that situation, basically what we're saying is they can't have probable cause unless they go to the county based upon the way the statute's written. No, but under my hypothetical, D. Giovanni knows that the county did its job and transmitted the information to the state. The state botches the information and he's not registered. Why is there not probable cause? Well, because if she knows that he provided the information to register. No, no. Well, that's the whole point. If he provided the information to register, then he's ensured that he's registered. Well, if the investigation would have gone beyond the absence of a record, the investigation would have found out that he had presented himself for purposes of registration and that, therefore, there couldn't be a crime. Okay, so your argument really foundationally depends upon the notion that as long as he presents himself for registration, there is not a crime, regardless of whether he is in fact registered. There's not probable cause. Well, isn't it that he has a reasonable belief that he is being registered because the probation office takes it and is going to follow through, so he does not believe he has an independent duty, and if in any event it's not knowing, failure. And so how does all of that play into the objective standard for qualifying? Well, the objective standard is that I would say that no reasonable officer or DA would, and this goes back to my original hypothetical, no reasonable officer or DA would say that there's probable cause that a crime involving intent and a knowing standard was violated just because there's an absence of a record that somebody did an affirmative act. This is a practical question, but I couldn't help asking it to myself a dozen times as I went through this file. Mr. Spiker was in jail for 320 days? That's correct. That's a long time. That's correct. I think I saw on the record one effort to lift the detainer. How was he allowed to stay in jail? Where was his defense lawyer? This is a guy who initially got probation, and then he's in for 320 days awaiting disposition. There's something that just doesn't ring right to me. That's really why we're here, because you're right. But DiGiovanni and Kelly aren't responsible for the fact that he was there more than one day. Well, as a matter of fact, DiGiovanni resisted all of the efforts of him to get released, and the probation office, as was developed, would not have incarcerated him at all. They would have registered him. All right. We'll hear from you. I have two minutes. May it please the Court, my name is Bernard Schneider. I represent ADA DiGiovanni. I think the most important fact here that goes to the question of knowing and the question of his reasonable belief, we must stick the record. Spiker, the crime is failure to register with the state police. The crime is knowingly. Knowingly failing to register. The duty doesn't have knowingly, but the crime has knowingly. Yes. Spiker never alleges that he gave his information to probation. What he alleges is that I went to the probation officer, she never told me to give it to her, she didn't take it from me, and she didn't process it. But that's not the point, is it? Isn't the point what's in the mind of DiGiovanni? She understands that he has not registered. She knows that under the law there is an obligation in the first instance on probation to register him. Would she not reasonably go to probation and say, wait a minute, he's not registered. Did you tell him, did you take the information, did you tell him he had an obligation? No. What is there to infer from which she reasonably can infer that his failure is a knowing failure on the record? On the record. On the record. First, he never alleges that he gave the information. It's not a matter of his allegation, it's a matter of what she knows. Okay. She checked the website. The website shows there's no registration. I thought she had Kelly check. She first checked the website. Okay. There was no registration. Okay, no registration. She had Kelly. There was not the response to Kelly as in the record wasn't we don't have a record. The response to Kelly was he's not registered. Okay. And the next question is why isn't he registered? Don't you at least pick up the phone and call probation to find out whether this was a knowing violation? And in this case, if she had called probation, probation would have said, no, we don't have any record of his registration. They would have said we didn't take the information and register. And she'd say, oh, well, will you please call him and tell him he's got to do this or we can't do it? No, because it's his duty is to register with the state police. Well, and the ambiguity that Judge Cogney found, I think, further undermines your argument. Because if it's ambiguous, when the statute says he must be required, it would say somebody has the obligation to require him. The statute doesn't say he shall. I apologize. Further down in the same section, it says the sex offender shall provide the Pennsylvania State Police with the registering information. Look at those two statutes together. With the information that D.G. Avani and Kelly had as of the time of the charge, would you say there was a prima facie case there? Was there enough simply on the basis of what the legal obligation is to register or what we can glean from the statute? Yes. And the determination after a computer check that there was no registration. Well, the determination wasn't, I don't know if it was after a computer check. Her check was a computer check. Okay. Kelly actually called the state police. The record indicates that the state police said he wasn't registered. But the answer is, yeah, that was not my question. My question was, isn't that enough for prima facie? Yes. I believe it is. And the last step of this is, she didn't tell Kelly, just go arrest him. She told Kelly, go get a warrant. And Kelly took this to a magistrate and got a warrant based on the allegations. In addition, and you actually sequentially set this out, she didn't authorize an arrest merely from her computer check. I mean, the implication has been from the plaintiff's side that somehow there was a nefarious motive in having contacted a police officer and this is somehow outside of the normal chain. But instead, one could look at that and say she didn't rely simply upon her own check, but she asked a police officer, an investigator, to take another step. Absolutely. I agree with that. Now, Spiker was acquitted of this crime later. Yes, ma'am. Do we know anything about that, about the basis for that? It's not in the record, but I think the – It was before Judge Mariani, there was a hearing before Judge Mariani. Yes. And he made a not guilty determination. Yes. I mean, Judge Mariani's – I'm just wondering whether he ruled that it wasn't knowing or there's some – because obviously if he was acquitted, they didn't have enough evidence. It's not in the record. My memory of the transcript is that Judge Mariani said there's not sufficient evidence that it may have been a mistake. One of the other things that Judge Mariani said, though, that's not in the record, he turned to Laura Ditka, who was prosecuting, and said, I'm not saying you didn't have probable cause, I'm just saying I don't think that he's guilty. Again, not in the record. Mr. Schneider, I have a concern, though, about the way this works because Judge Connie's opinion I think highlighted a potential problem. I'd like you to either tell us why it's not a problem or agree with her. There seems to be two tracks operating here. On the one hand, the county has an obligation to transmit the information, and on the other hand, the offender has a personal obligation to make sure that he's registered. And following up on Judge Hardiman's question, is the state and the county still even operating under this Megan's Law regime? Right. I don't know what the probation officer's policies and rules are. Mr. Lifson can address that. Is this still the law of Pennsylvania? The answer is I don't know that either, Your Honor. I was concentrating on the statute that I'm here for. The answer, Judge Hardiman, is that those are two separate duties that have nothing to do with each other. It's a fail-safe system. That's all it is. Mr. Spiker had the duty to report to the state police and report his information. Probation, as a fail-safe, also has a duty to report to the state police. Mr. Spiker's duty is not to do that. So you're suggesting that these are complementary to make doubly sure that the registration occurs. It's not some sort of whipsaw scenario where it's unclear as to who has the duty. You're saying it's clear that both the county and the offender have the duty. Right, and as I said, the duty is to report to the state police. Nothing in the record indicates that Mr. Spiker went to probation and said, I'm here to register as a sex offender. Please take my information so I can live up to my duty. Nothing in the record indicates that. But it's not beyond the pale, though, to think that somebody, he's a highly educated man, that somebody who would have some reference to the statute would believe that the county is actually going to get them signed up because the county, if it's agreed, has an obligation to do that. It's not beyond the pale for somebody who's an intelligent man as he is to use that as an excuse not to register with the state police and instead go to the probation office, say nothing, knowing that he's not going to be registered. If he read the law, the very first section of 9795.2, A-1 says you shall provide the information to the state police. And a man as intelligent as he is and as used to following orders as he is simply goes and follows the orders, Judge. All right, thank you very much. Thank you. May it please the Court, my name is Jake Lipson. I'm an assistant county solicitor with Allegheny County. I represent Detective Sean Kelly, Allegheny County police detective who became involved in the underlying matter when on June 18, 2009, his co-appellee, Jennifer DiGiovanni, Allegheny County assistant district attorney, instructed him to check on whether Is the county, you know, we know the facts. Is the county still operating under the same procedures it was back when this occurred? Under the same internal policies and procedures? Well, that's, yeah, that's my first question. It's my understanding that, yes, the same internal policies and procedures. Does the same statutory Megan's Law regime still obtain here in Pennsylvania as it did back at that time? That I don't know, Your Honor. I'm here for Detective Kelly who's not a member of the probation office. All right. I apologize for not knowing that fact. Could you address Judge Conte's ruling that there's an insufficient allegation to take the claim against Officer Kelly outside of the PSTCA? She, in effect, held there wasn't sufficient allegation of willful misconduct. But as I read the complaint at paragraphs 100 and 101 and 110, that's the appendix 398 and 400, there is that allegation. So I'm wondering whether her view is correct. Could you comment on that? Well, again, I think that the allegation of willful misconduct as to Sean Kelly again refers to this ambiguity in the statute. So it's that appellant's position is that Detective Kelly acted with willful misconduct, which then abrogates the immunity provided by the Political Subdivision Tort Claims Act because he knew or should have known about the statute and then also about the internal policies. Well, she specifically says he's entitled to immunity, and this is page 50 of the appendix, because Spiker failed to allege actions on his part that rise above negligence under Pennsylvania law. But as I read the complaint, it's pretty clear they do rise above negligence. Well, again, I think that goes back to the standard that was alleged by the appellant, and that was the knew or should have known standard. So that's the only way that the appellant linked the actions of Detective Kelly with what Detective Kelly purportedly should have known, which is that the statute, according to appellant, places the obligation on the probation office and not on the offender. But false arrest, false imprisonment, and malicious prosecution, he can bring those claims because he was acquitted. So he can bring those claims. How does probable cause enter into it? Well, he needs to get over the willful misconduct hurdle to get past immunity under the Political Subdivision Tort Claims Act. And so the issues on appeal of Detective Kelly pertain to the Fourth Amendment claim, the Fourteenth Amendment Equal Protection Claim, and the Pen and State Law Claims. The district court properly dismissed the constitutional claims sounding in false imprisonment, false arrest, and malicious prosecution analyzing the Fourth Amendment. In support of that claim, appellant alleged just the facts that were recounted here, that D.G. Avani instructed Kelly to check on whether he was registered, that detective checked, and then reported back to the ADA. Does his situation follow form exactly to D.G. Avani's, or would you distinguish the two in terms of the nature of the probable cause determination? First, I think it's important to note that what's at issue today is not whether or not probable cause existed, but whether or not the defendants are entitled to qualified immunity. The court assumed whether or not probable cause existed. So his situation is a little different in that regard. I think that applies to both Kelly and D.G. Avani. But I think Kelly's situation is further distinguished from D.G. Avani's because of the case that I cited in my brief, which is the Ginter v. Scahill case, Third Circuit, 2008, where a police officer who was acting at the directive of a district attorney was found to not have exhibited the type of conduct which would otherwise abrogate the qualified immunity. And that would be the plain incompetence or the willful violation of the law. Because here, Kelly acted in compliance with D.G. Avani's instructions to check on whether or not Spiker was registered and then to apply for the arrest warrant. And not only that, he was acting in accordance with the law, the whole statutory scheme, which is that under Megan's law, offenders have the duty to register. And under the Crimes Code, it's a criminal penalty for failing to register. So Kelly was acting both in compliance with the law and in compliance with an ADA's directive. Well, then wouldn't you say because he was acting in compliance with her instructions, and that is permissible, that he is perhaps one more step removed from or he has an easier qualified immunity situation? Correct. I would agree. First of all, I think that appellant's arguments in their brief and in oral arguments today are focused on probable cause. Again, the district court assumed probable cause and then went into qualified immunity. But in addition, I think that Kelly's situation is different because he was acting at the direction of the ADA. And again, I think at worst, appellant's interpretation of the statute, again, according to Judge Conley, creates this ambiguity, that either the offender and the probation office have an obligation or just the offender has an obligation. But if there's that ambiguity, at worst, Detective Kelly was guilty of or responsible for a reasonable mistake because this is a statutory conflict that the legislature hadn't resolved and that Kelly can't be faulted for relying on the first section, which places the obligation on the offender. Further, the district court did not abuse its discretion in denying leave to file a proposed third amended complaint because all that proposed third amended complaint would have done would have been to add the internal probation office policies. And appellant never alleged actual knowledge of those policies by Kelly, so I think at worst those policies would speak to the ambiguity and support that in addition to the offender's obligation, the probation office has an obligation. Are you saying he has to allege that Kelly should have known about these policies? For plain incompetence or for willful violation of the law, I would think that he would. I think, again, it doesn't go to probable cause. It goes to qualified immunity, and that standard, I think, is fairly high, plain incompetence or willful violation of the law. I don't think that appellants or I know that appellants didn't allege sufficient facts to reach those strict standards. All right. Thank you very much. Thank you. Dr. Jones? I'd just like to address a couple of points. There is a new statute, Judge Smith, and it actually requires I actually knew that. Okay. And obviously the earlier statute, if you look at the new statute, the earlier statute does have some problems. I mean, you know, okay. Pretty poorly written. Right. But I think that the construction that we've advanced here is that the first section says, well, shall be registered. That doesn't say, defendant, you have to go down to the state police. And then it says, for purposes of registration, this is what happens. It says must be required to. Yeah, must be required to. Okay. That's the language. Right. There's no, in the new statute, you've got 48 hours. There's no time limit. There's no direction to the defendant. And, in fact, part of that old statute, the part that talks about moving, if a sex offender moves, that statute says, well, you have to go to state police within 48 hours and tell them. So the point is that the way that statute was originally written, and the probation office did have the policy, we allege that, in the complaint, and they actually, you know, had the camera and everything. The way it was written is, from our interpretation, you couldn't assume that a person, there's not probable cause to think that a person has violated that statute without, just because their name doesn't appear in the registration. You have to go. What does that tell the inquiring officer, though? When an officer inquires and someone is not registered, whom the officer knows should be registered, what should the reasonable officer conclude or infer from that information? Well, the reasonable officer could, doesn't, I mean, doesn't have to, I mean, I don't know what the reasonable officer would conclude. Are we too reliant on data banks? I mean, are you suggesting that beyond what the computer check revealed, that law enforcement ought to go out and walk the pavement or knock on a door and find out and ask? And what if the answer is, yes, I did? But on the other hand, you have a record that says or suggests, no, he didn't. Well, then maybe there's not probable cause at that point to, if I have done everything and a bureaucrat has messed it up, well, then there's not necessarily probable cause that I've, But the point is, someone like Kelly doesn't know whether a bureaucrat messed it up at that stage. Well, but does he have probable cause to believe, from an objective, reasonable point of view, just because somebody's name doesn't appear, that means they're a knowing violator of a statute. I, you know, obviously, Maybe yes, maybe no. You'd suggest not. One other, if I could just, I know I'm out of time, but Judge Hardiman, you decided a case that no one cited, I apologize for that, Kelly v. Burr of Carlisle. It talks about whether Kelly would be shielded from the district attorneys instructing him to do it. And we would say in this case, no, because, you know, he has an independent obligation to know the statute. And so, but anyway, I just wanted to point that out. Thank you. Thank you, counsel. Thank you. We'll take it under advice.